## LEWIS ET AL. v. HUGHES.

1. LANDLORD AND TENANT — LEASE — CONSTRUCTION — INJURY BY
   FIRE.— Where a lease provided that the tenants should keep the
   premises in good repair, and that in case they became untenantable
   by fire the rent should cease till the same were rebuilt, injury by
   fire to furnishings, and damage by smoke and water, rendering
   occupancy unpleasant, did not exempt the lessees from obligation
   to pay rent.
2. SAME — REPAIRS BY LESSORS.— Nor were the lessors obliged under
   the lease to repair such damages.
3. SAME — EVICTION — DEMAND FOR RENT.— No demand for rent is
   necessary before eviction, under a lease providing that if the rent
   reserved, or any part thereof, shall be unpaid when due, the lessor
   may declare the term ended and repossess the premises, without
   making demand for rent, or giving notice of forfeiture.
4. SAME — RENT PAID AFTER EVICTION — LIABILITY OF LESSOR.— A
   lessee of a room cannot recover rent paid therefor on the ground
   that the lessor closed the room and refused the lessee the use of it,
   and that the latter paid rent thereafter under a mistake of fact,
   where the only evidence of the lessee's ignorance of the fact of
   eviction fails to show when he became advised of such fact, but
   does show that he continued to pay rent long after acquiring such
   knowledge.
5. SAME — INJURIES BY ANOTHER TENANT — LIABILITY OF LANDLORD.
   A complaint by a tenant against the landlord for damage caused
   by gasoline used by another tenant of the same building is de-
   fective if it fails to allege that the landlord rented the apartment
   to the latter tenant for purposes for which he knew or had reason
   to believe gasoline would be used, or that gasoline or some other
   dangerous substance was necessary for the purpose.

*Appeal from Superior Court of Denver.*

APPELLANTS, Charles E. Lewis, Frank T. Scott, James
G. Kilpatrick, Isabella Brown, Eugene W. Alexander
and Snow N. Alexander, were plaintiffs below, and in
their complaint set out six causes of action against ap-
pellee, Paul T. Hughes, but the fourth cause of action
was dismissed at the trial.

By the first cause of action appellants seek to recover
of appellee the sum of $225, upon the following alleged
facts: That on June 20, 1883, appellants leased of appel-

lee the furniture in the Academy of Music at Denver, at a monthly rental of $88.60, with a proviso in the lease that, if appellee paid off a chattel mortgage upon said furniture then held by Daniels and Fisher, then appellants should pay but $58.60 per month; that appellants continued to pay the rental of $88.60 until February, 1884, and that said chattel mortgage had then been for a long time discharged, and that appellant did not know of such discharge, and overpaid the sum of $225; that on February 9, 1884, they demanded of appellee the repayment of such overcharge, which he refused.

By the second cause of action appellants seek to recover of appellee the sum of $150 upon the following alleged facts: That on February 9, 1883, appellee made a lease in writing of the Academy of Music to Parker & Killen for five years; that on October 15, 1883, appellants were assignees of said lease, and as such assignees underlet the premises to W. J. Berkley; that appellee consented to all such transfers; that the monthly rental for said premises was the sum of $260.83; that there was a room under said Academy of Music which communicated with the stage by a special stairway, for which room appellants had no lease in writing, but which they rented from appellee for $50 per month; that about November 1, 1883, appellee closed up said stairway, and denied appellants and their tenant all access to the same; that appellants remained in ignorance of the action of appellee for more than three months thereafter, and continued to pay rent for said room, upon the demand of appellee, to the amount of $150, although neither they nor their tenant had any use of said room; that the sum was paid by mistake, and without consideration; that appellants demanded repayment of said sum of appellee, which was refused.

By the third cause of action appellants seek to recover of appellee the sum of $5,000 for damages sustained by them by reason of the negligent use of gasoline by a tenant

of appellee who occupied a room under the said Academy of Music as a restaurant, and they allege that said tenant used gasoline for fuel for cooking for said restaurant with the knowledge and consent of appellee, and that appellee well knew that it was dangerous to so use it; allege the destruction of and damage to scenery, furniture and fixtures, and the destruction of the value of their leasehold estate, by said fire.

By the fifth cause of action appellants seek to recover of appellee the sum of $5,000 as damages alleged to have been sustained by them by reason of having been, by the appellee, forcibly dispossessed of said Academy of Music and of said furniture, and of the refusal of appellee to permit appellants to occupy the same under said leases.

By the sixth cause of action appellants seek to recover of appellee the sum of $250 for moneys paid out by them in and about the repair of said Academy of Music, after the fire, at appellee's special request.

Appellee, for answer to the first cause of action, denied that the chattel mortgage mentioned therein was paid at any time before February 1, 1884; denied that appellants had overpaid anything on account of rent; and denied that anything is due to appellants on account of such rents.

For answer to the second cause of action, appellee denied that he at any time closed up the stairway to the Academy of Music from the room described in said cause of action, or took said room away from appellants or from Berkley, or refused appellants or their tenant access to the same; denied that appellants were at any time deprived of the use of said room by appellee, or paid appellee any sum as rent therefor after they ceased to have possession thereof; denied that appellants paid appellee any sum by mistake, or under misapprehension, or without consideration; denied that appellee knew, when he collected any sum of appellants, that the same was paid by mistake or without consideration.

For answer to the third, fifth and sixth causes of action, appellee put in issue every allegation made in each of said causes of action, and set up as a separate defense the covenants of the leases mentioned in the complaint, and alleged a breach of each and every of said covenants.

Appellants, for reply, denied all the allegations of the new matter set up in the answer.

Mr. John L. Jerome, for appellants.

Messrs. Wells, McNeil & Taylor, for appellee.

Rising, C. 1. Appellants, in their complaint, base their right to a recovery in the first cause of action upon the terms of the lease in relation to the payment of rent, by which terms they were to pay the sum of $88.60 monthly rent until the payment by appellee of a certain chattel mortgage, and then the rent was to be reduced to $58.60 per month. Evidence was introduced showing the payment of $88.60 per month for all the time rent was paid, but no evidence was introduced in support of the allegation in said complaint that the chattel mortgage had been paid at the time the alleged overpayments were made.

It is claimed by counsel for appellants that it appears from the evidence that appellee acknowledged that some rebate of the rent should be made on account of the payment of the chattel mortgage, and that the amount of such rebate was agreed upon between appellants and appellee. The testimony of the witnesses relating to the rebate, if admissible under the pleadings for any purpose, was only admissible to prove the payment of the chattel mortgage as alleged in the complaint, and it was wholly insufficient for that purpose.

2. A recovery is sought in the second cause of action solely on the ground that appellants paid appellee the sum of $150 under a mistake of fact. It is a familiar and well-settled principle of law that an action will lie to recover back money paid under a mistake of fact; and it is

equally well settled that an action will not lie to recover back money paid voluntarily, with a full knowledge of the facts and circumstances.

Is there any evidence tending to show that the money sought to be recovered back was paid by appellants under a mistake of facts? It appears from the evidence that appellants claimed the right to occupy a certain room under the stage in the Academy of Music under a lease from appellee at a rental of $50 per month, and that they paid such rent for the months of November and December, 1883, and for the month of January, 1884. The alleged mistake of fact is that appellants paid such rent for said three months in ignorance of the alleged fact that appellee about November 1, 1883, closed up a stairway leading from said room to the stage in the Academy of Music, and denied appellants and their tenants all access to said room. To entitle appellants to recover upon this cause of action, the evidence must show an eviction of appellants from the premises by appellee, and that appellants were ignorant of the fact of such eviction at the time such payments of rent were made. Assuming that appellants were evicted from the premises by appellee, the question then arises: Did appellants pay the rent for such room after such eviction in ignorance of that fact?

All the evidence upon this question is found in the testimony of James G. Kilpatrick, who is one of the appellants, in which he says: "We knew the stairway was closed, and talked it over a number of times. The manager told us that we had not the use of the room. Mr. A. N. Alexander was the manager. I don't remember when he first told us that they were using that room. It was perhaps a month or two months; perhaps three. I didn't take any note of the time. We knew long before the rent for January was paid. I can't place the time any further than that. I will swear to that positively." There is nothing in the testimony of this witness showing that appellants did not have full knowledge of the

removal of the stairway before the payment of any rent after such removal. The removal was made some time in November, and the November rent was paid on the 1st of the month. The witness swears positively that appellants had such knowledge long before the January rent was paid, and that was paid on the 1st of January. We do not think this testimony contains any evidence that the rent for this room was paid under a mistake of fact.

3. The allegations of the complaint, upon which the third cause of action is based, are: *First*, that appellee rented certain premises to L. Mosconi for a restaurant; *second*, that said tenant, with the knowledge and consent of appellee, used gasoline for fuel for cooking for said restaurant; *third*, that appellee, well knowing the danger of such use of gasoline, permitted it; *fourth*, that the stove in which such gasoline was used was in a room rented by appellants from appellee, but which appellee had taken from appellants without their knowledge prior to the 1st day of February, 1884; *fifth*, that appellants sustained damage from a fire January 29, 1884, caused by the negligent use of such gasoline by said Mosconi, in the sum of $5,000; *sixth*, that appellants were ignorant of the use of gasoline on said premises until after the fire arising therefrom.

There is no evidence to sustain several of these allegations, but it is unnecessary to consider the evidence, for the reason that the facts alleged are insufficient to constitute a cause of action. When a tenant enters into the possession of leased premises, the landlord's liability for damages caused by the manner of the occupation thereof is in general suspended. To make the landlord liable under such circumstances, he must have known, or had reason to believe, when he let the premises, that they would be used in such a way as would render such occupancy dangerous, or as would amount to a nuisance. Tayl. Landl. & Ten. § 175, and cases cited. It is not alleged in the complaint that the premises were rented to Mos-

coni by appellee for a restaurant, the cooking for which appellee knew, or had reason to believe, was to be done with gasoline for fuel, or that such cooking would necessarily have to be done with gasoline or with other dangerous substances; on the contrary, it is expressly alleged in the complaint that the use of gasoline for such purpose was unnecessary.

4. In the fifth cause of action, as stated in the complaint, appellants allege that appellee took forcible possession of the leased premises and personal property, and refused to permit appellants to occupy the same under the leases, to their damage in the sum of $5,000. Appellee took possession of the premises under a claim of right, by reason of the non-payment of rent by appellants. Appellants, while admitting that such possession was taken after the time fixed for the payment of the rent, and that the rent remained unpaid, claim that no rent was due, for the reason that the premises were made untenantable by reason of fire, and so remained at the time such possession was taken by appellee. The question presented is, under the terms of the lease, Was it the duty of the lessor, or of the lessees, to repair such an injury to the premises as shown by the evidence in this case? The lessees covenanted to surrender the premises in as good order and condition as when entered upon, loss by fire, or inevitable accident, or ordinary wear, excepted, and to keep said premises in good repair during the term of the lease at their own expense. It is evident that, unless these covenants are modified by other provisions of the lease, it was incumbent upon the lessees to make the repairs under consideration. It is further provided in the lease that, "in case the premises shall become untenantable, by reason of fire or otherwise, the rent shall cease until the same are rebuilt;" and it is claimed by appellants that there is evidence tending to show that the premises became untenantable by reason of fire, and that if such was the fact they were relieved

from the payment of rent until the premises were made tenantable by the lessor; and that the question whether the premises were so made untenantable should have been submitted to the jury.

We think the clause relating to the suspension of rent refers to such injury to the premises as cannot be required, but necessitates a rebuilding of the premises; and when we consider the covenants on the part of the lessees to repair, with the provision relating to the suspension of rent, it seems evident that such provision was intended solely to relieve the lessees from their common-law liability to pay rent in case of the destruction of the leased premises by fire. There is no evidence tending to show a loss or destruction of the premises, or such an injury thereto as would warrant the jury in finding as a fact that the same could not be repaired, but, to be made tenantable, must be rebuilt. The evidence shows conclusively that, if the premises were rendered untenantable by the fire, it was on account of the injury to the scenery and the furnishings, and from the effect of the smoke and water in rendering the occupancy of the premises unpleasant; and we do not think such evidence brings the case within the terms of the lease relating to the suspension of the rent.

It is contended by counsel for appellants that the eviction of appellants by appellee for non-payment of rent was unauthorized, for that no demand of the payment of such rent was made, in compliance with the requirements of the common law. We do not think this objection is well taken. By the terms of the lease it is provided that if the rent reserved, or any part thereof, shall be behind or unpaid on the day when payment should be made, it shall be lawful for the lessor to declare said term ended, and to re-enter and repossess the said premises, without first making any demand for the rent, either upon the premises or elsewhere, and without giving any notice of the forfeiture of the lease. No demand for the payment

, of the rent was necessary. A failure by appellants to pay rent, as the same became due and payable by the terms of the lease, constituted a breach of the covenant to pay the rent, and an entry by appellee at any time after such breach, and while the breach continued, was good. Tayl. Landl. & Ten. § 297; *Associates v. Howland*, 5 Cush. 214.

As we construe the lease, there is no evidence tending to show that appellee was required to make the repairs necessitated by the fire, and, this being so, there is no evidence to sustain the fifth and sixth causes of action.

The judgment should be affirmed.

DE FRANCE and STALLCUP, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinions the judgment is affirmed.

*Affirmed.*