**FRANCAM BUILDING CORPORATION,**
**a Colorado corporation, Petitioner,**

v.

**Larry F. FAIL, Respondent.**

**No. 80SC281.**

Supreme Court of Colorado,
En Banc.

May 24, 1982.

Rehearing Denied June 28, 1982.

Myrick, Newton & Sullivan, P. C., Michael P. Serruto, James W. Nearen, Jr., William E. Myrick, Denver, for petitioner.

Caskins & Chanzit, Richard M. Chanzit, Denver, for respondent.

ROVIRA, Justice.

Petitioner, Francam Building Corporation (Francam), commenced an action against Larry F. Fail (Fail) in the County Court of Arapahoe County to regain possession of premises for failure to pay rent. The trial court dismissed the complaint because of Francam's failure to serve a three-day "pay or vacate" demand on Fail pursuant to section 13–40–104(1)(d), C.R.S. 1973. On appeal, the District Court in and for the County of Arapahoe affirmed. We granted certiorari and now reverse the judgment of the district court.

In 1977 Francam and Fail entered into a written lease for office space which required payment of rent on the first day of each month. A dispute arose between the parties, and in June 1979, Fail tendered a check in an amount less than the full rental due. Francam refused to accept the partial payment and notified Fail, in writing, that the lease was terminated and demanded immediate possession. Fail refused to vacate the premises, and Francam initiated an action to recover possession by filing a complaint in the county court in which it alleged failure to pay rent, election to terminate, demand for possession, and waiver of statutory notice pursuant to the lease agreement.

Fail denied the material allegations of the complaint and, by way of affirmative defense, claimed that the attempted termination of the lease was invalid because Francam did not give Fail three days' notice to pay rent or vacate the premises pursuant to section 13–40–104(1)(d), C.R.S. 1973.

During the bench trial, the lease between the parties was introduced into evidence. The provision relied upon by Francam to support its argument that there was a waiver of statutory notice provided that:

"It is expressly understood and agreed, by and between the parties aforesaid, that if the rent above reserved, or any part thereof, shall be in arrears, or if default shall be made in any of the covenants or agreements herein contained, to be kept by the said lessee, it shall and may be lawful for the said lessor to declare said term ended, and enter into the said premises, or any part thereof, either with or without process of law, to re-enter, and the said lessee or any person or persons occupying the same, to expel, remove, and put out, using such force as may be necessary in so doing, without being liable to prosecution or in damages therefor, and the said premises again to repossess and enjoy, as in the first and former estate of the said lessor. And if at any time said term shall be ended as aforesaid or in any other way, the said lessee hereby covenants and agrees to surrender and deliver up said premises peaceably to said lessor. Immediately upon the termination of said term, and if the lessee shall remain in possession of the same after the termination thereof, said lessee shall be deemed guilty of a forcible detainer [sic] 'of said premises under the statute, *hereby waiving all notice*, and shall be subject to eviction and removal, forcibly or otherwise, with or without process of law, as above stated." (emphasis supplied).[1]

The trial court, relying upon section 13–40–104(1)(d), C.R.S. 1973, ruled that Francam failed to comply with the statute by not giving Fail three days' notice in writing requiring, in the alternative, payment of rent or possession of the premises.[2] The court further ruled that the waiver of notice provision in the lease only related to rights that the parties had after termination of the lease and that such termination had not occurred here. The court then dismissed the complaint for noncompliance with the statutory condition precedent.

The district court affirmed, holding that the waiver of notice provision contained in the lease was not applicable until the lease had been terminated by Francam and that an effective termination could not be accomplished unless the requirements of section 13–40–104(1)(d) had been met.

### I.

The issues presented in this case are: (1) whether the notice requirement of section 13–40–104(1)(d), C.R.S. 1973, may be waived by a provision in a lease; and, if so, (2) whether the provision in the lease between the parties effectively waived the notice requirements of the statute.

### II.

Section 13–40–104(1)(d), C.R.S. 1973, a part of the Colorado Forcible Entry and

---

1. Section 13–40–101(2), C.R.S. 1973, defines forcible detainer as follows:

   "If any person enters peaceably upon any lands, tenements, mining claims, or other possessions, whether any person is actually in or upon the same at the time of such entry and by force turns the party in possession out or, by threats or by words or actions which have a natural tendency to excite fear or apprehension of danger, frightens the party out of possession and detains and holds the same, such person so offending is guilty of a forcible detainer within the meaning of this article."

   The facts presented in this case do not constitute a forcible detainer as it is defined in the statute. The trial court decided and both parties have presented this case as one arising under the unlawful detention provision of the Forcible Entry and Detainer Statute. *See* section 13–40–104(1)(d), C.R.S.1973; *see also* note 2 *infra.* Accordingly, we construe the lease to

mean unlawful detention rather than forcible detainer.

2. Section 13–40–104(1)(d), C.R.S.1973, provides:

   "(1) Any person is guilty of an unlawful detention of real property in the following cases:
   . . . .
   (d) When such tenant or lessee holds over without permission of his landlord after any default in the payment of rent pursuant to the agreement under which he holds, and three days' notice in writing has been duly served upon the tenant or lessee holding over, requiring in the alternative the payment of the rent or the possession of the premises. It shall not be necessary, in order to work a forfeiture of such agreement, for nonpayment of rent, to make a demand for such rent on the day on which the same becomes due; but a failure to pay such rent upon demand, when made, works a forfeiture;"

Detainer Statute, defines unlawful detention. It addresses the situation where the lessee holds over without the landlord's permission after default in the payment of rent. Under the statute, the lessee is guilty of an unlawful detention only after he is in default and has been duly served three days' notice in writing requiring, in the alternative, payment of rent or possession of the premises.

■ The Forcible Entry and Detainer Statute was designed to provide landlords with an expeditious method of gaining possession of their premises following a termination of a tenancy or a breach of a lease. Further, it offers tenants a remedy against landlords who are guilty of forcible entry. *R. Schoshinski, American Law of Landlord and Tenant* § 6:10 (1980).

The provisions of section 104(1)(d), requiring three days' notice to either pay the rent due or deliver possession of the property are, in part, derived from requirements which existed at common law. At common law, a lessor was required to make a demand for rent due before exercising any right of reentry reserved for breach of a covenant to pay rent. *Miller v. Sparks*, 4 Colo. 303 (1878).

This common law requirement was considered in *Lewis v. Hughes*, 12 Colo. 208, 20 P. 621 (1888). There the court was called upon to interpret a lease provision which provided that, if the rent was not paid on the day it was due, the lessor could declare the term ended and reenter and repossess "without first making any demand for the rent, either upon the premises or elsewhere, and without giving any notice of the forfeiture of the lease." *Id.* at 215, 20 P. at 625. The court enforced the provision and allowed forfeiture without requiring a prior demand for rent.

*Lewis* is in conformity with the general rule. A landlord need not comply with the common-law requirement that he make a demand for the rent prior to declaring a forfeiture if the lease expressly so provides. *See R. Schoshinski, American Law of Landlord and Tenant* § 6:1 (1980); 3A G. Thompson, *Real Property* § 1336 (J. Grimes rev. 1981).

■ We believe that, like the common-law requirements, the provisions of section 104(1)(d) may be waived by the terms of the lease agreement. *See Jones v. Sheetz*, 242 A.2d 208 (D.C.1968) (waiver of statutory 30-day notice provision not unfair or unreasonable where tenant could control landlord's ability to invoke lease waiver clause by complying with covenants in the lease); *Espen v. Hinchcliffe*, 131 Ill. 468, 23 N.E. 592 (1890). *See also R. Schoshinski, American Law of Landlord and Tenant* §§ 6:3, 6:13 (1980). This conclusion is based upon several considerations. First, the demand and notice requirement of section 104(1)(d) is the modern, statutory counterpart of the common-law demand for rent requirement; and as we have already noted, the common-law demand for rent can be waived by lease provisions. *See Lewis v. Hughes, supra.* Second, it is well established that, in the absence of an express statutory provision barring waiver or countervailing public policy,[3] parties may enter into contracts abrogating or limiting statutory provisions which confer a right or benefit upon one or both parties. *See Creek v. Nonpareil Inv. Co.*, 66 Colo. 550, 185 P. 473 (1919); *In re Marriage of Johnson*, 42 Colo.App. 198, 591 P.2d 1043 (1979); 28 *Am.Jur.2d Estoppel and Waiver* § 164 (1966). *See also Capitol Fixture & Supply Co. v. National Fire Ins. Co.*, 131 Colo. 64, 279 P.2d 435 (1955) (contract limiting time within which to bring suit to twelve months, the statute of limitations notwithstanding, is not unreasonable).

Here, the statutory provision requiring an alternative demand for rent or possession is for the benefit of the tenant; and if

---

**3.** We note that some legislatures have adopted the view that statutory notice requirements may not be waived in residential leases. *E.g.,* Mass.Gen.Laws Ann. ch. 186 § 15A (West 1977); Uniform Residential Landlord and Tenant Act §§ 1.403, 4.201, 7A U.L.A. 521, 547 (1978). The Colorado General Assembly has not evidenced an intent to preclude waiver of statutory notice requirements by enacting legislation similar to the Massachusetts statute or by adopting the Uniform Residential Landlord and Tenant Act.

the tenant agrees to waive the benefit, he should be held to his bargain. The legislature has not forbidden a waiver of the notice requirement and, in the absence of any evidence of public policy to the contrary, we see no valid reason to ignore the waiver provision and rewrite the lease agreement. We believe that the words of the United States Supreme Court in *Baltimore & Ohio Southwestern Ry. v. Voigt,* 176 U.S. 498, 505, 20 S.Ct. 385, 387, 44 L.Ed. 560, 565 (1900) are apt:

> "[T]he right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare."

### III.

Having established that the notice requirement of section 13–40–104(1)(d), C.R.S. 1973, may be waived, we now consider whether the "waiving all notice" provision of the lease effectively accomplished a waiver of that requirement. We conclude that it does.

The lease provided in pertinent part that "if the rent . . . shall be in arrears, . . . it shall and may be lawful for the said lessor to declare said term ended . . . ." Further:

> "[I]f at any time said term shall be ended as aforesaid or in any other way, the said lessee . . . agrees to surrender and deliver up said premises . . . . Immediately upon the termination of said term, and if the lessee shall remain in possession of the same . . . said lessee shall be deemed guilty of a forcible detainer [sic] . . . under the statute, hereby waiving all notice, and shall be subject to eviction and re-

moval . . . with or without process of law, as above stated."

The above provision provides for the termination of the lease. Further, it provides post-termination remedies for gaining possession of the premises if the tenant refuses to vacate upon termination.

The termination procedure provided in the lease does not contain an express waiver of the common-law requirement of a demand for rent. However, in the present case, Francam's agent appeared at the leased premises and made a demand for rent past due. Fail tendered a check for less than the monthly rent, claiming a setoff for improvements. Francam refused the partial payment and exercised its contractual right to declare the lease terminated by giving Fail written notice to quit the premises. Thus, Francam complied with the termination procedures set forth in the lease and with procedures established at common law.[4]

The lease then provides for post-termination remedies. It clearly states that once the lease has been terminated the lessee shall deliver possession of the premises, and any failure to do so shall constitute a "forcible detainer . . . under the statute, hereby waiving all notice . . . ." The latter clause effectively waived the notice requirements of section 104(1)(d). It clearly provides that if the tenant fails to surrender the premises he shall be guilty of a forcible detainer under the statute and that he waives all notice.

Accordingly, the statutory notice requirements of section 104(1)(d) were inapplicable to the present case. The landlord properly terminated the lease and invoked his contractual right to employ the Forcible Entry and Detainer Statute without being obligated to give any notice thereunder. The county court erred in dismissing the case.

---

4. We note that Francam reserved the right to declare the lease terminated if the tenant failed to pay rent or breached any covenants. It further reserved the right to reenter following a termination and to remove the tenant. In *Shoemaker v. Pioneer Invs.,* 14 Utah 2d 250, 381 P.2d 735 (1963), the Supreme Court of Utah held that the reservation of a right to reenter, repossess, and terminate the lease upon the tenant's breach of a covenant was sufficient to waive any right to a demand for payment of rent prior to a declaration of termination.

The judgment is reversed, and the cause is remanded for a determination on the merits of the controversy.

DUBOFSKY, LOHR and QUINN, JJ., dissent.

LOHR, Justice, dissenting.

I respectfully dissent. My review of the Forcible Entry and Detainer Statute, section 13–40–101 et seq., and its apparent legislative purpose, convinces me that the notice provision of section 13–40–104(1)(d), C.R.S. 1973 is not subject to contractual waiver. Therefore, I would affirm the judgment of the trial court.

The apparent purpose of our Forcible Entry and Detainer Statute and, more particularly, section 13–40–104, C.R.S. 1973, is to provide the landlord with a summary procedure for recovering possession of his property. See R. Schoshinski, American Law of Landlord and Tenant § 6:10 (1980); 3A G. Thompson, Real Property § 1370 (J. Grimes rev. 1981). The benefits perceived to flow from such a procedure include avoidance of the expense and delay incident to the more cumbersome action of ejectment formerly employed at common law, and an inducement for the landlord to rely upon judicial remedies rather than the disruptive and sometimes hazardous remedy of self-help. Id.

However, in creating this expeditious remedy, the legislature explicitly limited the conditions under which it could be invoked. As relevant here, the legislature carefully specified the type of notice required in an unlawful detainer action depending upon the asserted basis for challenging the tenant's right to possession of the property. Thus, section 13–40–104(1)(c) provides that a tenant who holds over after the expiration of the term of his lease or after a tenancy at will or by sufferance has been terminated by either party is guilty of an unlawful detention, without any requirement of additional notice. In contrast, where a tenant holds over after a default in the payment of rent, section 13–40–104(1)(d) provides that the tenant is not guilty of unlawful detention unless he fails to comply with the statutorily prescribed three day notice to quit or pay rent.[1] Finally, section 13–40–104(1)(e) creates a residual category applicable to tenants who hold over in violation of any other conditions or covenants of the lease agreement. In such cases, a tenant is guilty of unlawful detention if he fails to surrender the premises within three days after the landlord serves notice requiring the delivery of possession.

The legislature's careful distinctions among these various forms of unlawful detainer actions for purposes of the notice requirement convinces me that this requirement is an important part of the statutory scheme, considered essential to the fair operation of this summary procedure. This conclusion is also reinforced by more general consideration of the nature and effect of an unlawful detainer action.

Because the unlawful detainer action is designed to be a summary procedure, an expedited procedure for return of summons is provided, section 13–40–111, C.R.S. 1973, and continuation of the trial date for a period longer than five days is conditioned upon the posting of bond, section 13–40–114, C.R.S. 1973. Further, the issues which

---

1. The full text of section 13–40–104(1)(d), C.R.S.1973 is as follows:

    (1) Any person is guilty of an unlawful detention of real property in the following cases:

    \*   \*   \*   \*   \*   \*

    (d) When such tenant or lessee holds over without permission of his landlord after any default in the payment of rent pursuant to the agreement under which he holds, and three days' notice in writing has been duly served upon the tenant or lessee holding over, requiring in the alternative the payment

of the rent or the possession of the premises. It shall not be necessary, in order to work a forfeiture of such agreement, for nonpayment of rent, to make a demand for such rent on the day on which the same becomes due; but a failure to pay such rent upon demand, when made, works a forfeiture;

The parties do not address the purpose or effect of the final sentence of subsection (d). The majority of the court does not address its applicability, if any, to the facts of this case. Accordingly, I do not consider it in this dissent.

may be litigated in an unlawful detainer action have been quite limited historically. Thus, the assertion of affirmative defenses or counterclaims has often been proscribed or substantially restricted. *See generally,* R. Schoshinski, *American Law of Landlord and Tenant* § 6:17 (1980). Consequently, the legislature has accorded the landlord substantial benefits in such an action.

The price of those benefits is a simple requirement that, where the action is brought for a failure to pay rent, the landlord provide the tenant with an opportunity to vacate the premises or cure his default within three days after written notice.

The tenant's opportunity to cure his default or vacate the premises may avoid the disruption and expense of litigation. The opportunity to cure is also an equitable counterbalance to the disadvantages to the tenant in preparing his defense in the face of an expedited procedure. More importantly, the opportunity to cure is a reflection of the law's general disapproval of forfeitures, a principle which has played an important role in shaping landlord and tenant law. *E.g., Beck v. Giordano,* 144 Colo. 372, 356 P.2d 264 (1960).

The importance of strict adherence to the notice provision of section 13–40–104(1)(d) is demonstrated by the decision in *Tumbarello v. Byers,* 37 Colo.App. 61, 543 P.2d 1278 (1975). There, the Colorado Court of Appeals held that the notice served in an unlawful detainer action brought for failure to pay rent was fatally deficient because it demanded only that the tenant vacate the premises within three days, and failed to demand, in the alternative, the payment of rent. The court concluded that such defective notice was insufficient to establish a basis for the harsh remedy of forfeiture of the leasehold.

Furthermore, section 13–40–104(1)(d) is more than a mere notice provision. The giving of three days notice in accordance with that statute is an essential element of the definition of unlawful detention. There is no indication in the statute that waiver of notice will serve as a surrogate for the three day notice element. It is the commission of an unlawful detention, by satisfying the specific statutory requirements including three days notice, which triggers the landlord's ability to invoke the statutory summary procedure for recovery of possession of the leased property.[2]

In summary, I find the notice requirement of section 13–40–104(1)(d) to be an integral part of the statutorily prescribed scheme for unlawful detainer actions. That notice requirement preserves a balance between the rights and remedies of the landlord and the tenant in such actions, and furthers broader considerations of public policy. Because of this, I conclude that the legislature did not intend the notice requirement to be subject to contractual waiver. I fear that the undesirable result of the decision today will be a proliferation of standard form leases incorporating such a waiver, and a resulting destruction of the delicate balance of rights and remedies that was intended by the General Assembly.

I would further note, however, the narrowness of the issue resolved by the majority in the present case. The lease at issue here concerned the rental of office space. Whether this court would reach the same result where the contractual waiver of right to notice concerned a residential lease is a question that I believe is reserved for another day.

---

**2.** In this respect, section 13–40–104(1)(d) differs from the corresponding statutes of other jurisdictions cited in n. 3 of the majority opinion, *see* Mass.Gen.Laws Ann. ch. 186 §§ 11, 15A (West 1977); Uniform Residential Landlord and Tenant Act §§ 1.403, 4.201, 7A U.L.A. 521, 547 (1978). While section 13–40–104(1)(d) makes the service of statutory notice an essential element of unlawful detention, the Massachusetts statute and the Uniform Act phrase the statutory notice requirement as a mere notice provision. Consequently, the failure of our General Assembly to provide specifically that the notice provision of section 13–40–104(1)(d) cannot be contractually waived is not a persuasive reason for concluding that such a waiver is permissible. By making the notice requirement of the statute an essential element of unlawful detention, our legislature has implicitly provided that it may not be waived and has rendered unnecessary an additional provision, such as that found in Massachusetts and in the Uniform Act, precluding such waiver.

I would affirm the judgment of the trial court.

I am authorized to say that Justice DUBOFSKY and Justice QUINN join me in this dissent.

